OPINION OF THE COURT
Saxe, J.
Plaintiffs Access Point Medical, LLC and its wholly owned *42 subsidiary, Access Point Medical, Inc., were formed by nonparty Bill Kidd, with the assistance of defendant attorney Edward R. Mandell, to engage in the business of manufacturing and selling durable home medical equipment such as wheelchairs, canes, walkers, and oxygen tanks. Kidd was plaintiffs’ largest shareholder and served as chairman of the board. In this action, plaintiffs essentially allege that defendants, acting as their attorneys, actively misled them and failed to disclose critical information because, while representing them, defendants simultaneously represented Kidd when Kidd’s interests were adverse to theirs.
Plaintiffs commenced this action on February 17, 2010, alleging causes of action for legal malpractice, breach of contract, and breach of fiduciary duty, and seeking damages including compensatory damages and the “disgorgement” of the $658,117.68 they paid to defendants in legal fees. In support of these causes of action, the complaint alleges a number of events. First, that Mandell and his law firm, defendant Troutman Sanders, LHP, prepared the private placement memoranda when Kidd decided to sell plaintiffs’ securities to outside investors in order to recoup his investment, and errors in those memoranda exposed plaintiffs to legal liability. Second, that defendants improperly represented both Kidd and plaintiffs in the drafting and negotiating of a management services agreement between them, despite, and without disclosing, the existence of a conflict between their interests.
Plaintiffs further allege that defendants negotiated a line of credit for them from Wells Fargo, while failing to address Kidd’s causing or contributing to their deteriorating financial condition and the certainty of their default on the line of credit, rendering them liable for extra penalties and fees and, ultimately, causing the cancellation of the line of credit. In addition, plaintiffs claim that defendants failed to properly inform them of warning letters sent by the Food and Drug Administration regarding allegedly defective products being sold by them, resulting in loss of business and damage to their business reputation.
Defendants’ motion to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7) was granted (2011 NY Slip Op 32107 [2011]). The motion court observed that the claims for malpractice and breach of fiduciary duty were barred by the three-year statute of limitations (CPLR 214), because all the complained-of *43 conduct occurred in 2005 or 2006. As to the language added in plaintiffs’ amended complaint, that “[u]pon information and belief, Troutman’s and Mandell’s representation of APM continued through March 2007,” the motion court found that it was conclusively disproved by the last entry on defendants’ final invoice to plaintiffs, which reflects a telephone call on February 14, 2007, more than three years before this action was commenced.
Plaintiffs do not challenge the motion court’s determination that their legal malpractice action was barred by the three-year statute of limitations, since the cause of action accrued in 2005 or 2006, this action was commenced on February 17, 2010, and the continuous representation doctrine was not shown to be applicable. However, they challenge the ruling that their breach of fiduciary duty claims are also barred by the three-year limitations period.
Plaintiffs’ argument against treating the fiduciary duty claims as time-barred has changed over time. They acknowledged before the motion court that the three-year limitations period applied to the breach of fiduciary duty claims, but insisted that under the continuous representation doctrine the fiduciary duty claims did not start to run until some time after March 2007. Now plaintiffs take the position that it is the six-year statute of limitations that applies to their claims for breach of fiduciary duty.
For breach of fiduciary duty claims, “the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks” (IDT Corp. v Morgan Stanley Dean Witter & Co., 12 NY3d 132, 139 [2009]). Plaintiffs characterize their claim, seeking the return of $658,117.68 that they paid in attorneys’ fees, as an equitable claim for “disgorgement,” to which they contend the six-year limitations period should apply. However, we reject plaintiffs’ contention that the remedy they seek is properly characterized as an equitable claim for disgorgement.
Plaintiffs rely on this Court’s statement that “[d]isgorgement is an equitable remedy” (see J.P. Morgan Sec. Inc. v Vigilant Ins. Co., 91 AD3d 226, 230 [1st Dept 2011], lv granted 19 NY3d 806 [2012]). However, the disgorgement remedy referred to in J.P. Morgan Sec. and the cases it discusses is fundamentally different than the “disgorgement” plaintiff seeks here. Claims for disgorgement most commonly arise in actions brought by the Securities and Exchange Commission in which the agency seeks *44 an order directing a party to disgorge its ill-gotten gains for the recompense of injured investors or some entity other than the prosecuting agency (see J.P. Morgan Sec. Inc. v Vigilant Ins. Co., 91 AD3d 226, 230 [2011] and cases discussed therein). Other types of government agencies or quasi-governmental entities also have sought the disgorgement of wrongfully obtained funds to third parties (see e.g. Morgan Stanley Capital Group Inc. v Public Util. Dist. No. 1 of Snohomish Cty., 554 US 527, 538 [2008]; Montana v Crow Tribe, 523 US 696 [1998]). Similarly, the equitable disgorgement relief sought by the plaintiff in IDT Corp. v Morgan Stanley Dean Witter & Co. (12 NY3d at 139) consisted of profits Morgan Stanley allegedly earned as investment banker for a third party through the third party’s allegedly improper financial dealings with IDT; consequently, the disgorgement of those profits could not necessarily be accomplished simply by awarding IDT a judgment against Morgan Stanley in the amount of funds that it had paid out.
In contrast, plaintiffs’ demand for the return of attorneys’ fees they paid to defendants is, essentially, a claim for monetary damages. The calculated use of the term “disgorgement” instead of other equally applicable terms such as repayment, recoupment, refund, or reimbursement, should not be permitted to distort the nature of the claim so as to expand the applicable limitations period from three years to six. We cannot allow a purely semantic distinction to control the application of the statute of limitations.
Nor do we accept plaintiffs’ alternative argument that the breach of fiduciary duty claim is essentially a fraud claim, to which the six-year statute would be applicable. The amended complaint is based on an alleged conflict of interest and allegedly impaired professional judgment, and it does not allege the elements of fraud (see Buller v Giorno, 57 AD3d 216 [1st Dept 2008]). The failure to disclose a conflict of interest does not transform a breach of fiduciary duty into a fraud.
Another new contention plaintiffs raise on appeal is that the statute of limitations must be treated as tolled, not only pursuant to the continuous representation doctrine, but also under the fiduciary tolling rule, also known as the open repudiation rule.
As the motion court found, no facts are alleged that would justify the application of the continuous representation doctrine to toll the statute of limitations.
Nor, we find, is the fiduciary tolling rule, or open repudiation rule, applicable to plaintiffs’ breach of fiduciary duty claims. *45 Under that rule, the statute of limitations on claims against a fiduciary for breach of its duty is tolled until such time as the fiduciary openly repudiates the role (see Matter of Barabash, 31 NY2d 76, 80 [1972]). The cases in which this rule arose, and the cases applying it, reflect that the rule arose to protect beneficiaries in the event of breaches of duty by fiduciaries such as estate administrators (see Barabash, 31 NY2d at 80), trustees (see Matter of Ashheim, 111 App Div 176 [1st Dept 1906], affd 185 NY 609 [1906]), corporate officers (see Westchester Religious Inst. v Kamerman, 262 AD2d 131 [1st Dept 1999]), and receivers (see Golden Pac. Bancorp v Federal Deposit Ins. Corp., 273 F3d 509 [2d Cir 2001]), that is, in circumstances in which the beneficiaries would otherwise have no reason to know that the fiduciary was no longer acting in that capacity. In those circumstances, it is appropriate to toll the limitations period until the beneficiary has reason to know that the fiduciary relationship has unequivocally ended.
However, where one party’s fiduciary obligations to another arose out of their attorney-client relationship, and would not have existed without that relationship, there is no need for an open repudiation of the fiduciary’s role, because the attorney’s fiduciary duty to the client necessarily ends when the representation ends. Plaintiffs’ causes of action alleging breach of fiduciary duty specifically assert that defendants’ fiduciary duty to them arose out of their attorney-client relationship with them, thus, their fiduciary relationship ended when their attorney-client relationship ended, without any need for a declaration to that effect.
We recognize that in 212 Inv. Corp. v Kaplan (44 AD3d 332 [1st Dept 2007]), this Court accepted the premise, framed by the parties, that the open repudiation doctrine applies to equitable claims brought by clients against their attorneys, although not to claims for money damages. That decision states, without elaboration, that “the ‘open repudiation’ doctrine tolls the statute of limitations on the [client’s] unjust enrichment claim [against the lawyer], which seeks equitable relief’ (id. at 334, citing Matter of Kaszirer v Kaszirer, 286 AD2d 598, 599 [1st Dept 2001], and Westchester Religious Inst. v Kamerman, 262 AD2d 131 [1st Dept 1999]). However, we observe that neither of the cited cases concerned claims against attorneys for breach of their fiduciary duty to their clients arising out of the attorney-client relationship. Matter of Kaszirer concerned a claim by a trust beneficiary against a trustee, and Westchester Religious *46 Inst, involved a claim by a nonprofit corporation against its officers for breach of their fiduciary duty; both of those claims form proper bases for application of the open repudiation rule. And unlike this case, in 212 Inv. Corp., neither party questioned the applicability of the fiduciary tolling rule to an attorney whose fiduciary duty arose out of the attorney-client relationship, so this Court was not required to decide that issue. Presented with the issue now, we reject the application of the fiduciary tolling rule to claims by a client against an attorney for breach of the fiduciary duty arising out of the attorney-client relationship, at least in the absence of a true entitlement to equitable relief.
Accordingly, the order of the Supreme Court, New York County (Judith J. Gische, J.), entered August 2, 2011, which, to the extent appealed from as limited by the briefs, granted defendants’ motion to dismiss as time-barred the claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty, should be affirmed, without costs.
Andrias, J.P, Moskowitz, Freedman and Abdus-Salaam, JJ., concur.
Order, Supreme Court, New York County, entered August 2, 2011, affirmed, without costs.